

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Dan W. Jackson
District Attorney
Houston, Texas

Dear Sir:

Opinion No. O-3680
Re: Authority of county commissioners'
court to make contract with F.W.A.
to furnish usual facilities in
Federal housing area.

In your letter of July 21, 1941, you enclosed copy
of a contract proposed to be made between the Administrator
of the Federal Works Agency and Harris County, the active
parts of which contract read as follows:

"That in consideration of the mutual covenants and
conditions hereinafter set forth, the parties hereto
agree as follows:

"1. The Administrator shall pay to the County
annually a sum equal to 4.3 per cent of the total annual
dwelling shelter rentals charged for occupied units in
the Development, provided that the amount to be paid
in lieu of taxes for any year with respect to the
Development shall never exceed the taxes that would be
paid upon such property if it were not exempt from
taxation. For the purpose of evidencing compliance
with the provisions of this Paragraph, the County will
furnish the Administrator with such information as may
from time to time be requested. For purposes of this
Paragraph, shelter rent shall mean the charge established
(or estimated) for the use of a dwelling excluding the
furnishing of any utilities (i. e. water, heat, heating
of water, light, cooking fuel, or refrigeration energy).

"2. The amount to be paid annually by the Govern-
ment pursuant to Paragraph 1 hereof shall be paid at the
same time as ad valorem taxes are due the County.

"3.   The County agrees that during the period commencing with the date of the acquisition of any part of the site or sites for the Development and continuing for the life of this Agreement, it will not make any charge against the Government for any special services in connection with the construction and administration of the Development except such charges as may be agreed to by or on behalf of the Administrator.

"4.   The County will furnish to the Government and the tenants of the Development, the usual services and facilities which are or may be furnished without cost or charge to other dwellings and inhabitants in the County.

"5.   Nothing in this Agreement shall be construed to confer any exemption upon the tenants who may occupy the Development from the payment of taxes which may be lawfully assessed against them.

"6.   The County will distribute each such annual payment in lieu of taxes to the taxing bodies in such proportion that each taxing body will receive from the total payment by the Administrator hereunder the same proportion as said taxing body's ad valorem tax rate bears to the total ad valorem tax rate which would be levied against the Development if it were operated by private enterprise and subject to normal taxation. For purposes of this Agreement, the term 'taxing bodies' shall mean the State of Texas and every political subdivision or taxing unit thereof (including the County and excluding the Houston Independent School District) which shall have authority to levy taxes, or to certify taxes to a taxing body or public officer, to be levied for its use and benefit, and in which the Development is situated.

"7.   This agreement shall continue in full force and effect with respect to the Development so long as title thereto is held by the Government and so long as the emergency declared by the President on September 8, 1939, to exist, continues; provided, however, that so

long as title to the Development is held by the Government after said emergency has terminated this Agreement shall continue in full force and effect until sixty days after either party has given to the other written notice that the Agreement shall terminate at the end of said sixty days.

"8.  Upon the sale by the Government of any part or parts of the Development, the part or parts so sold shall, from the date of sale, no longer be considered part of the Development.  Upon the termination of this Agreement as to the whole of the Development, the Government will pay such portion of the annual payment called for by Paragraph 1 hereof as the elapsed portion of the twelve-month period bears to the twelve months.

"9.  No Member of or Delegate to the Congress of the United States of America shall participate in the funds made available under this Agreement.

"10.  Nothing herein shall be construed as obligating the County to act beyond its lawful authority and power to do so.  And this contract is executed only in its official capacity as a county of the State of Texas."

You make the aside explanation that title to the land and premises is vested in the United States.  You request our opinion as to whether the County has authority, through its commissioners' court, to enter into such contract and bind itself under the terms thereof.

The Administrator would be acting pursuant to Public No. 849, 76th Congress, the Lanham Act, which provides in part:

"Section 1.  In order to provide housing for persons engaged in national-defense activities, and their families, in those areas or localities in which the President shall find that an acute shortage of housing exists or impends which would impede national-defense activities and that such housing would not be provided by private capital when needed, the Federal Works Administrator (hereinafter referred to as the 'Administrator') is authorized:

Hon. Dan W. Jackson, page 4

"(a)  To acquire prior to the approval of title
by the Attorney General (without regard to sections 1136,
as amended, and 3709 of the Revised Statutes) improved
or unimproved lands or interests in lands by purchase,
donation, exchange, lease . . ."

"Sec. 9.  The Administrator may enter into any
agreements to pay annual sums in lieu of taxes to
any State or political subdivision thereof, with
respect to any real property acquired and held by
him under this Act, including improvements thereon.
The amount so paid for any year upon any such property
shall not exceed the taxes that would be paid to the
State or subdivision, as the case may be, upon such
property if it were not exempt from taxation.

"Sec. 10.  Notwithstanding any other provision
of law, the acquisition by the Administrator of any
real property pursuant to this Act shall not deprive
any State or political subdivision thereof of its
civil and criminal jurisdiction in and over such
property, or impair the civil rights under the State
or local law of the inhabitants on such property."

From a search of the files of this Department and
inquiry at the Governor's office it appears fairly certain
that no deed has been executed by the Governor, pursuant to
Art. 5247, Revised Civil Statutes, ceding exclusive juris-
diction over these lands to the Federal Government.  Indeed,
from a reading of Sec. 10 of the Lanham Act, it seems ap-
parent that Congress does not expect any such cession of
jurisdiction.  Thus we are not confronted with a case of
different sovereignties asserting conflicting claims of
jurisdiction.  The jurisdiction of the State, through its
subdivision the county, is not only not disputed, it is
admitted, and its exercise is invited and would be paid for.

Our system of government may have looked simple
at one time.  But, if it ever was simple it has changed.  It
is now a complicated maze of governmental agencies and sub-
divisions, Federal and State, and it daily grows more neces-
sary that such various subdivisions and agencies meet and
deal with each other on friendly and cooperative terms.

In the area of this Defense Housing project will
reside a large number of people.  Not only are they entitled
to receive the privileges and benefits of government, such

as are extended to those around them, it is manifestly to the public welfare that they be extended such privileges and benefits. Local governments cannot operate without sources of revenue, a fact which the Federal Government is here recognizing, and to avoid any discrimination against the inhabitants of such area offers to pay to the State and its subdivisions money in lieu of the taxes which would have been collectible against this land if it had not come into Federal Ownership.

There are many governmental services, we cannot undertake to enumerate them, which our system of State government, through its various agencies, including the County, may lawfully extend to this area. Actually, so far as the signatures of the County officials are concerned, this contract will amount to little more than a declaration of policy to the effect that the residents of this area will not be discriminated against. The contract itself makes no attempt to enumerate the specific obligations to be assumed by Harris County. By its express terms it negatives any obligation on the part of the County to act beyond its lawful authority and power. In view of that provision in paragraph 10, it is evident that paragraph 4, setting out the obligations of the County in the most general terms, could not be construed as an attempt to bind the County to do anything beyond that which is lawful and proper for it to do. Hence, in our opinion the Commissioners' Court may lawfully execute the contract and receive the tendered sums of money for distribution as provided in the contract.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By (signed) Glenn R. Lewis
Glenn R. Lewis
Assistant

GRL:AMM

APPROVED AUG 7, 1941

(Signed) Grover Sellers

FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED OPINION COMMITTEE
By B. G.   Chairman